## IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

## MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES ASHE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:09cv1029-MHT |
| | ) | (WO) |
| CITY OF MONTGOMERY and | ) | |
| TONY'S AUTOMOTIVE, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

### OPINION

Plaintiff James Ashe charges in this lawsuit that his property was confiscated, purportedly as a public nuisance, in violation of both federal and state law. His federal claims are based on 42 U.S.C § 1983 and assert that defendants City of Montgomery, Alabama and Tony's Automotive, LLC violated the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment. His state claims are for trespass and negligence against Tony's Automotive. This case was removed from state to federal court pursuant to 28 U.S.C. § 1441, based on 28 U.S.C §§ 1331 (federal question) and

1343 (civil rights), and 28 U.S.C. § 1367(c)(3) (supplemental jurisdiction).

This case is now before the court on the City of Montgomery's and Tony's Automotive's motions for summary judgment. Summary judgment will be granted in favor of the city and Tony's Automotive as to the federal claims, and the state claims against Tony's Automotive will be remanded to state court.

## I.  SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Under Rule 56, the court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.

<u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>,
475 U.S. 574, 587 (1986).


II.   BACKGROUND

This case arises from two separate city proceedings
to abate a public nuisance on Ashe's property.   The
events related to the proceedings are set out below.


A. First Complaint and Proceeding

- <u>April 23, 2007</u>: The Montgomery City Inspections
  Department received a complaint regarding junk
  vehicles parked in Ashe's yard.  After investigating
  the complaint and determining it to be valid, a city
  inspector placed a sign on Ashe's property and mailed
  written notice to his home address,[1] advising him
  that he was responsible for abating the nuisance
  pursuant to city law and granting him until May 4 to

—————————————————

1. Ashe's address was verified by reference to the
Montgomery Tax Assessor's Record of Ownership.  Def.'s
Exs. 2 and 7 (Doc. No. 16-4).

bring his property into compliance with municipal law.[2]

- <u>May 22</u>: The city re-inspected the property and found the nuisance had not been abated.

- <u>May 23</u>: A second notice was sent to Ashe, stating that a public hearing would be held before the city council on June 5, at which time the council would vote on a resolution authorizing the city to abate the nuisance.  Ashe was also instructed to file any objection to the proceeding with the city clerk five days before the council meeting and to appear before the council and explain why the objection should be sustained.  The notice further stated that, "Failure either to file an objection with the City Clerk or to

---

2. The relevant actions in this suit occurred in 2007, at which time the policies and procedures governing the abatement of a public nuisance were set forth in Montgomery Ordinance No. 28-2002.  While this ordinance has since been revised, the new policy under Montgomery ordinance 34-2009 is substantively identical to the prior one.  Thus, in analyzing this case, the court finds that reliance upon the provisions of the 2002 ordinance does not prejudice either party.  The parties themselves do not raise the issue.

4

appear before the City Council shall constitute a waiver of any rights you may have to contest the abatement or removal of the nuisance." Def.'s Ex. 4 (Doc No. 16-4).

- <u>May 23</u>: On the same day that the second notice was sent to his residence, Ashe called the City Inspections Department and informed an inspector he was leaving town for a funeral, but would remove the vehicles upon his return.

- <u>June 5</u>: The hearing was held as scheduled, and the council adopted a resolution declaring Ashe's property a public nuisance subject to abatement. Ashe did not attend the hearing; nor did he submit any objection to the abatement procedure.

### B.   Second Complaint and Proceeding

- <u>August 7, 2007</u>: No further action was taken by either party until this date, when the city received another complaint against Ashe, concerning litter, junk, and

trash in Ashe's yard.  Again, in accordance with city law, a sign was placed in Ashe's yard and a notice mailed to his residence, both of which stated that he had ten days, until August 18, to abate the nuisance.

- <u>August 22</u>: The property was re-inspected and the inspector found Ashe had failed to clean his property.

- <u>August 23</u>: A second notice was mailed to Ashe, advising him of a public hearing before the city council on September 4.

- <u>September 4</u>: At the hearing, the city council passed a resolution authorizing the city to abate the nuisance.  Again, Ashe did not attend the hearing or object to the resolution.

- <u>September 22</u>: According to Ashe, a city inspector visited Ashe's residence and gave him three additional days to clean his yard, which Ashe did with the help of his neighbor and sons.[3]

---

3. There is no record of the city inspector's visit
(continued...)

6

- <u>October 16</u>: Asserting that they did not have the proper paperwork and that the nuisance had already been abated, Ashe refused to allow city inspectors or abatement agents on his property.  Three Montgomery City Police Department Officers were then called to oversee the process.  Ashe continued to resist, and the police officers handcuffed him and pushed him to the ground, injuring his head in the process.  Using a dump truck, city agents removed Ashe's personal property, including lumber, an iron door, an antique wood-burning stove, and other furniture items; Tony's Automotive, as an agent of the city and at the direction of the inspectors, removed several vehicles, though, according to Ashe, the vehicles were tagged and in working condition.[4]

---

3. (...continued)
in the city records.

4. Ashe submitted copies of the tags for nine vehicles he registered with the State of Alabama, but he does not offer evidence that in any way controverts the city's records showing the poor condition of these
(continued...)

As a result of the two abatement proceedings against him, Ashe filed a complaint in state court against the City of Montgomery and Tony's Automotive.  Tony's Automotive was named in its capacity as an abatement agent for the city.  The case was subsequently removed to federal court.  The city and Tony's Automotive now move for summary judgment.


III.  DISCUSSION

A.  City of Montgomery

1.  Violation of
Fifth Amendment Takings Clause

Ashe claims he suffered a taking without just compensation, in violation of the Fifth Amendment,[5] when

_____

4. (...continued)
vehicles, or their improper placement in Ashe's yard, at the time of the abatement.  Furthermore, there is no indication that the tags refer to the same vehicles that were towed during the abatement.

5. The Fifth Amendment Takings Clause is made applicable to the States through the Fourteenth Amendment.  Garvie v. City of Ft. Walton Beach, Fla., 366 F.3d 1186, 1187-88 (11th Cir. 2004) (citing Palazzolo v.
(continued...)

the City of Montgomery initiated abatement procedures and removed "approximately ten vehicles" and "various yard items and wood[] that [he] had for personal use and a yard sale." Pl.'s Br. at 4-5.[6]  The Takings Clause "is designed not to limit the governmental interference with property rights <u>per se</u>, but rather to secure compensation in the event of otherwise proper interference amounting to a taking." <u>Lingle v. Chevron U.S.A. Inc.</u>, 544 U.S. 528, 537 (2005).  Therefore, "a State need not provide compensation when it diminishes or destroys the value of property by stopping illegal activity or abating a public nuisance."  <u>Keystone   Bituminous   Coal   Ass'n   v. DeBenedictis</u>, 480 U.S. 470, 491 n.22 (1987).  "The exercise of the police power by the destruction of property which is itself a public nuisance . . . is very

---

    5. (...continued)
<u>Rhode Island</u>, 533 U.S. 606, 617 (2001)).

    6. In his brief opposing summary judgment, Ashe addresses his takings claim and due-process claims concurrently.  However, the court has distinguished the claims in accordance with the counts in his complaint.

different from taking property for public use, or from depriving a person of his property without due process of law.  In the one case, a nuisance only is abated; in the other, unoffending property is taken away from an innocent owner." <u>Empire State Ins. Co. v. Chafetz</u>, 278 F.2d 41, 42 (5th Cir. 1960) (quoting <u>Pasternack v. Bennett</u>, 138 Fla. 663, 671 (Fla. 1939)).[7]  In other words, it is settled that in the exercise of the police power a State "may take, damage, or destroy private property without compensation, when the public necessity, the public health, or the public safety require it to be done." <u>Hulen v. City of Corsicana</u>, 65 F.2d 969, 970 (5th Cir. 1933).

Here the city removed Ashe's personal property in an abatement action that was sanctioned by the city's representatives and authorized under a state law that

_____

7. In <u>Bonner v. Prichard</u>, 661 f.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

provides that "all cities and towns of this state shall have the power to prevent injury or annoyances from anything dangerous or offensive or unwholesome and to cause all nuisances to be abated and assess the cost of abating the same against the person creating or maintaining the same." 1975 Ala. Code § 11-47-117. Ashe does not suggest, and there is nothing in the record to indicate, that the city acted beyond the scope of its police authority in abating the nuisance. In fact, he admits that by placing signs in his yard and mailing written notices, the city was exercising its power in accordance with city law for the abatement of a public nuisance. Accordingly, because the city was within its legal rights in removing Ashe's belongings, summary judgment will be granted on his takings claim.

## 2. Violation of Fourteenth Amendment Due Process Clause

Ashe asserts violations of both his substantive and procedural due-process rights under the Fourteenth

Amendment.   The Fourteenth Amendment ensures that, "No State shall . . . deprive any person of life, liberty or property, without due process of law."   U.S. Const. Amend. XIV.  The substantive component of the Due Process Clause recognizes those "rights that a state may not remove, regardless of the process, as well as actions that can not be countenanced, regardless of the appropriateness of the process."  McKinney v. Pate, 20 F.3d 1550, 1560 n.15 (11th Cir. 1994) (en banc). However, "conduct by a government actor will rise to the level of a substantive due-process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense."  Waddell v. Hendry Cty. Sheriff's Office, 329 F.3d 1300, 1305 (11th Cir. 2003) (citing Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125 (1992) ("As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are

12

scarce and open-ended.")). Applying this strict standard, the court finds that Ashe has failed to set forth a valid claim for a substantive due-process violation. He presents no evidence that the city engaged in "conscience shocking" behavior or that the city acted arbitrarily. Nor could he. As noted in the discussion on unconstitutional takings, the city clearly acted within the scope of its legitimate police power throughout the abatement process. This action taken in the service of the general welfare did not constitute a substantive due-process violation. See Garvie, 366 F.3d at 1191 (government policy is arbitrary only if it lacks a "substantial relation to the public health, safety, morals, or general welfare") (quoting Euclid v. Ambler Realty Co., 272 U.S. 365, 395 (1926)). As Ashe has failed to set forth evidence of arbitrary or conscious-shocking action in this case, there is no basis for finding a violation of substantive due process.

Ashe's procedural due-process claim fails as well. Though the city had a right under municipal and state law to cure the pubic nuisance, it was required to ensure proper procedural safeguards in effectuating the abatement. As this court stated in <u>Ellis v. City of Montgomery</u>, 460 F. Supp. 2d 1301, 1304 (M.D. Ala. 2006) (Thompson, J.), a procedural due-process analysis entails a three-step inquiry: "First, did the plaintiff have a constitutionally protected property interest? Second, did the government deprive the plaintiff of that interest? Third, did the government employ constitutionally adequate procedures prior to the deprivation--that is, did the plaintiff receive the process he was due?" There is no question that Ashe had a constitutionally protected interest in his personal property, including the vehicles that Ashe contends were properly registered with the State of Alabama but removed by the city. It is also uncontested that the city deprived Ashe of this protected interest when it removed

14

his personal property from his yard.  What the parties do dispute is whether the procedures used to effect this deprivation were "fair and adequate under the Constitution." Id. (citing United States v. Salerno, 481 U.S. 739, 746 (1987) ("[G]overnment action depriving a person of life, liberty, or property ... must ... be implemented in a fair manner.")).

The crux of this suit is whether Ashe received proper notice prior to being deprived of his possessions by the city.  Ashe sets forth several arguments as to why the city failed to notify him adequately of the pending abatement action.  An inadequate-notice claim is analyzed under the reasonableness standard set forth in the seminal due-process case of Mullane v. Ventral Hanover Bank & Trust Co., which states that, "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and

15

afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950).  <u>See also Ellis</u>, 460 F. Supp. 2d at 1304.

Montgomery Ordinance No. 28-2002 sets forth the protocol for abating a public nuisance on private property.  Section 12-62(a) states that, "Whenever a condition prohibited by this article is found to exist on private property within the city, the housing code department shall cause a written notice to be mailed ... to the occupant at the address of the property upon which the nuisance exists."  Ord § 12-62(a) (Doc. No. 16-3). The notice must contain "a description of the real property"; "a direction to abate the nuisance within ten days from the date of the notice"; "a description of the nuisance"; a statement that, "unless the nuisance is abated, the city may abate the nuisance and the cost of abatement shall be assessed against the property or recovered from the property owner"; and a statement that "failure to abate the nuisance within ten days from the

date of the notice may result in criminal prosecution."
Id. at § 12-62(b).  This notice procedure also requires
that the city conspicuously post a sign, entitled "Notice
to Abate Nuisance," in the offending property owner's
yard.  Id. at § 12-62(c).  If the nuisance is not abated
within the requisite ten day time-frame, "the housing
code department may present a resolution to the city
council to have the nuisance condition abated by the
city."  Id. at § 12-63(a).  At this hearing, the city
council must "consider all evidence, objections, and
protests regarding whether or not the condition
constitutes a nuisance and whether the condition should
be ordered abated or removed."  Id. at § 12-63(b).  The
property owner is granted the express right to object to
the proceedings.  Upon passage of the resolution, the
city acquires jurisdiction "to proceed and to perform or
have performed the work of removal or abatement with
respect to the property or part thereof."  Id.

17

In contesting the city's procedures, Ashe argues that he received neither a first nor a second notice of the nuisance action that was initiated in April 2007, and he denies that his property was re-inspected on May 23.  As to the second nuisance action, commenced in August 2007, Ashe admits he received a preliminary notice of the nuisance complaint, which was mailed on August 8, but he contends that this notice failed to set a deadline by which he had to abate the nuisance; he also argues that the city did not re-inspect his property on August 22, as so indicated by the city records.  While Ashe concedes that the city held public hearings on the nuisance complaints, he states that he "was unaware" of these proceedings before they took place.  Pl's Br. at 2 (Doc. No. 29).  Ashe concludes by noting "there has been no proof that said notices were mailed or that the recorded property owners received said notice," and "it is disputed what notices were sent ... [as] he did not receive the overwhelming majority of them."  Id. at 8.

18

After reviewing the record, the court finds that Ashe's arguments fail. Under the business records exception to the hearsay rule, the court considers the city's proffered records for the truth of the matters asserted therein. <u>See</u> Fed. R. Evid. 803(6) ("The following are not excluded by the hearsay rule, even though the declarant is available as a witness: ... (6) A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness."); <u>see also</u> <u>Itel Capital Corp. v. Cups Coal Co., Inc.</u>, 707 F.2d 1253, 1259 (11th Cir. 1983) ("[U]nder Federal Rule of Evidence 803(6), documents made and kept in the ordinary course of

19

business are admitted as an exception to the hearsay
rule.  To be admitted under this exception, the person
who actually prepared the documents need not have
testified so long as other circumstantial evidence and
testimony suggest their trustworthiness.").

The record reflects that the city did the following:
Nuisance proceedings were initiated against Ashe after
the city received complaints from Montgomery residents
regarding Ashe's property.  See Def.'s Exs. 1 and 6 (Doc.
No. 16-4).  Ashe was notified of his offenses on four
separate occasions: April 24, 2007 (Def.'s Ex. 3) (Doc.
No. 16-4); May 23, 2007 (Def.'s Ex. 4) (Doc. No. 16-4);
August 8, 2007 (Def.'s Ex. 8) (Doc. No. 16-4); and August
23, 2007 (Def.'s Ex. 9) (Doc. No. 16-4).  The letters
sent on April 24 and August 8 set forth the specific
deadlines by which Ashe was required to abate the
nuisance, and the May 23 and August 23 documents notified
Ashe of the upcoming city council hearings and informed
him he was allowed to object to the abatement

proceedings. The records also confirm that city inspectors completed both initial inspections and re-inspections of Ashe's property, so that Ashe had the opportunity to improve the state of his yard before the official abatement took place.

There is no factual doubt as to the trustworthiness of these documents, as Chief Property Maintenance Inspector Thomas Karrh submitted an affidavit swearing that the records submitted by the city were maintained by the City of Montgomery Inspections Department, "made and kept in the ordinary course [of] business," where Karrh is the regular custodian of such records. Karrh Aff. (Doc. No. 16-4). Additionally, each document is dated and time-stamped. Karrh also attested to the city's official procedures in the abatement of a public nuisance, stating: It is "the policy and procedure of the City of Montgomery Inspections Department to have an inspector appear at each city council meeting to offer evidence of the existence of a nuisance. The evidence is

presented to the City Council, the owner of the property in question is provided an opportunity to be heard and the Council votes on whether there is evidence to support issuance of a resolution designating a public nuisance." Id. Karrh confirmed the accuracy of the records that notified Ashe of the nuisance and advised him of his right to contest the city's proceedings.

Despite the record evidence, Ashe maintains that he failed to receive many of the notices sent by the city regarding his property.  However, even in the unlikely event that Ashe did not receive those directives, that fact does not establish a constitutional violation. Procedural due-process analysis is concerned with whether the proceedings were "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Ellis, 460 F. Supp. 2d at 1304.  Here the city followed all requisite procedures set forth under Ordinance 28-2002 and, as evinced by the

city inspectors' numerous in-person visits and telephone
calls, it went above and beyond to ensure that Ashe was
notified of the nuisance complaints, was aware of his
duty to abate the nuisance, and was apprised of his right
to object to the proceedings at designated council
hearings.

While there are admittedly circumstances where the
U.S. Constitution may require more process than that
provided under a municipality's local law, see Logan v.
Zimmerman Brush Co., 455 U.S. 422, 432 (1982) ("[B]ecause
'minimum [procedural] requirements [are] a matter of
federal law, they are not diminished by the fact that the
State may have specified its own procedures that it may
deem adequate for determining the preconditions to
adverse official action.'") (citations omitted), in this
case, the evidence demonstrates that the city provided
adequate procedural safeguards to ensure that residents
do not suffer harm to their property without due notice
and an opportunity to be heard.  Over the course of five-

23

and-a-half months, the city mailed Ashe four written notices, convened two city council meetings, passed two formal resolutions, initiated several in-person visits and telephone calls, and posted two conspicuous yard signs, all in an effort to allow Ashe the opportunity either to abate the nuisance on his property or to protest the city's decision to do so on its own. That Ashe chose not to take advantage of these procedures or even that the procedures may have failed in one or two instances does not indicate that they were constitutionally inadequate. The evidence that the city's extensive abatement procedures meet <u>Mullane's</u> reasonableness standard is overwhelming.

Ashe raises several additional but related arguments in his opposition to summary judgment. First, he argues that notice was not properly provided to Nelline Thrasher, who also lives at Ashe's residence. The city's record of ownership shows that both James Ashe and Nelline Thrasher reside at the residence in question.

Under Montgomery policy, the city was required to "cause
a written notice to be mailed by first class mail to the
occupant at the address of the property upon which the
nuisance exists."   Ord. § 12-62(a) (Doc. No. 16-3).
There is no requirement that multiple copies of the
notice be sent to a private residence with more than one
occupant.  Even if the mailing procedures were inadequate
in this regard, however, the city did post two
conspicuous signs, entitled "Notice to Abate Nuisance,"
in the property yard, which should have put Thrasher on
notice.  Furthermore, because Thrasher is not a party to
this litigation, Ashe lacks standing to contest the
procedural inadequacies of the city's notification
process on her behalf.  See, e.g., Haitian Refugee Center
v. Graccey, 809 F.2d 794, 809 (D.C. Cir. 1987) ("Third
party standing [] is appropriate only when the third
party's rights protect that party's relationship with the
litigant.  Thus, a litigant may not be given third party
standing to assert constitutional rights of third parties

25

that do not protect a relationship, such as procedural
due-process rights.   A litigant therefore could never
have standing to challenge a statute solely on the ground
that it failed to provide due process to third parties
not before the court.").   Thrasher's due-process rights
do not create a genuine issue of fact as to Ashe's claim.

Ashe also asserts that, because the notice did not
identify the vehicles that were subject to abatement, he
never received prior notification that the vehicles
removed by the city constituted a nuisance.   Ashe
acknowledges he received some warning of the pending
removal action, admitting he had "contact with Inspector
Smith on a semi-regular basis regarding his automobiles,"
as well as "a phone conversation with Inspector Eddie
Hill prior to the abatement." Pl.'s Br. at 5-6 (Doc. No.
29).   He also "received oral and written notice in
regards to his August 7, 2007 encounter with the City
Inspector, who at the time of [his] visit placed a sign
in [Ashe's] yard." Id. at 7.   However, Ashe argues these

notification procedures were not "reasonably calculated to provide which vehicles were subject to seizure," id., as they did not indicate either the make or model of the offending automobiles.  Referring to the city's April 24 notice, which informed Ashe that his "junk vehicles" constituted a public nuisance "in violation of Municipal Ordinance 28-2002," Def.'s Ex. 3 (Doc. No. 16-4), he points specifically to a handwritten notation on the form, which states simply "Brown Chevy-no tires."  Id. Ashe contends that, because the notation refers only to one car, a Chevy, and the city actually removed several vehicles, he did not receive adequate notification of the nuisance.

Ashe's argument is unavailing.  The April 24 notice, which clearly advised that he remove the "junk vehicle(s)" or any "motor vehicles" parked in his yard and undergoing repair, adequately warned him that he was responsible for moving any vehicles fitting this specific description.  Id.  Furthermore, the evidence suggests

that the barely decipherable "Brown Chevy" notation was merely a "follow-up" note written by the City Inspection Department for internal use and was not intended to serve as part of the original notice to Ashe.  Def.'s Br. at 2 (Doc. No. 30).[8]

Similarly, Ashe contends that, because the notifications he received during the second nuisance action in August 2007 did not contain any reference to his vehicles, the cars were removed without notice in violation of due process.  It is true that the notices sent on August 8 and 23 do not refer to Ashe's cars; instead, they state that his property has been classified as a nuisance due to the "accumulation of litter, junk [and] trash" in his yard.  Def.'s Exs. 8 and 9 (Doc. No. 16-4).  However, the city argues that, because the city

_____

8. The city points to other identical handwritten notes on the document as evidence that the "Brown Chevy" reference was only one of many internal remarks that were not written for Ashe's benefit.  One such note indicates that the re-inspection of Ashe's property was rescheduled for May 17, while another note states that the re-inspection actually took place on May 22.

28

council had already passed a resolution finding that
Ashe's vehicles constituted a nuisance under local law
and had provided Ashe with the requisite notice in that
action (in April and May 2007), it was under no
obligation to repeat its efforts when instituting a
second, and separate, nuisance action three months later.
The court concurs.  Ashe was provided with notice as to
the vehicular nuisance, and the city did not have to
"remind" him of the resolution in a subsequent nuisance
action.   He had already received two written
notifications and a posted warning, as well as various
oral reminders by Inspection Department agents, that his
vehicles had to be removed from his yard.  This was
clearly adequate notice.

Ashe also asserts that, after speaking with a city
inspector on August 7, he "elicited the paid help" of his
neighbor and sons to clean his property to bring it in
compliance with the code.  Pl.'s Br. at 7 (Doc. No. 29).
He denies that a second inspection occurred on August 22,

29

but rather contends that the city took no further action until it initiated abatement procedures on October 16. Consequently, he argues that he had a right to re-inspection of the property prior to final abatement.

In addition, he contends that the abatement action took place well after the time allotted by city law. He states that, under Ordinance 28-2002 § 12-134, abatement must occur no more than 17 days after the city council declares the property a nuisance, while the city here waited over one month after the passage of the second resolution to send abatement agents to his residence.

As a preliminary matter, the court notes that its responsibility is to determine whether the abatement procedures put in place are constitutionally adequate. Whether the city complied with state law is not at issue here; rather, the question is whether the city's procedures pass constitutional muster. Overall, as stated, the procedures providing for notice and adjudication of public nuisance complaints indicate that

30

Ashe had adequate notice; furthermore, going so far as to evaluate the city's actual actions, the court mst conclude that Ashe's right to due process was fully respected throughout the abatement process.

As to Ashe's argument that the August inspection did not occur, the court has two responses.  First, even if it did not occur, there is no question, as the court has already indicated, that the overall procedure gave him adequate notice and was otherwise fair.  Second, as to whether in fact it did occur, that is a matter of state law and not federal law.

Ashe also appears to argue that, because four months passed between the first resolution and the abatement, and over one month passed between the second resolution and the abatement, he was entitled to a re-inspection before the city confiscated his property.  Per ordinance 28-2002 § 12-63, however, he was not entitled to a subsequent inspection after the city passed either of the resolutions and acquired full jurisdiction over the

matter by democratic process.  See Ord. § 12-63(b) (Doc. No. 16-3) (stating that the city council "by passage of the resolution, shall be deemed to have acquired jurisdiction to proceed and to perform or have performed the work of removal or abatement with respect to the property," and that the council's decision on the matter "shall be deemed final and conclusive.").  Ashe was given notice and opportunity to correct each nuisance prior to the hearings, and to attend the hearings and dispute before the city council the basis for declaring a nuisance.  He chose neither of those paths, opting instead to challenge legitimate procedures after the fact.  The record indicates that the city provided him with the requisite number of inspections and opportunities to contest the city's findings.  Because Ashe presents no other evidence that he lacked proper time or opportunity to ameliorate the conditions of his property, his objection to the inspection process will not stand.

32

As to his argument that the city failed to conduct the abatement action in the legal time-frame, this contention also lacks merit, for there is no such requirement in the relevant ordinance.  Instead, § 12-63 states merely that, upon appointment, the "registered nuisance abatement agents shall have ten days to abate the nuisance and 15 days to submit the bill to the housing office."  Ord. § 12-63(d) (Doc. No. 16-3).  Ashe does not show, or even suggest, that the abatement agents here failed to act within the requisite ten-day period after being appointed by the city.  In any event, even if the city failed to comply with its time requirement, this is a state violation, not a federal one.

Finally, Ashe asserts that, regardless of the process used, the abatement of his vehicles was unwarranted, as they "were operable, with [] current tag[s] and tires, inflated, not parked in the front yard, and within the exception for sale."  Pl.'s Br. at 5 (Doc. No. 29).  The records show, and it has been stated repeatedly in this

33

opinion, that Ashe had a fair opportunity to contest the declaration of his property as a nuisance before the proper channels of government.  He did not do so and cannot now seek redress--and a second bite of the apple-- before this court.  This challenge is also outside of this court's purview because it is an argument based on how the given procedures were followed and not whether those procedures were constitutionally adequate.  Should Ashe believe that the city incorrectly removed operable vehicles that were illegally parked, then he should seek redress in state court.  This court, in considering federal claims, does not sit as a general board of review of the actions of the City of Montgomery.

In sum, the city records demonstrate that the process Ashe received over the course of five months and two nuisance proceedings was undeniably fair and adequate and, above all, reasonably calculated both to apprise him of the pendency of the nuisance actions and to afford him an opportunity to present his objections to the city

34

council.   See Mullane, 339 U.S. at 314; Ellis, 460 F. Supp. 2d at 1304.   Ashe's claim that he suffered a violation of procedural due process cannot be maintained.


### B.   Tony's Automotive, LLC

#### 1.   Violation of the Fifth Amendment Takings Clause and the Fourteenth Amendment Due Process Clause

Ashe charges in his complaint that Tony's Automotive's actions constituted a taking in violation of the Fifth Amendment.  Comp. ¶ 20 (Doc. No. 1-1).  He also claims that "Tony's Automotive['s] acts were unlawful because the City of Montgomery actions were unlawful and without notice in violation of the 14th Amendment." Pl.'s Reply. Br. at 2 (Doc. No. 40).  The court will assume that Tony's Automotive was a state agent.  See National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179 (1988); West v. Atkins, 487 U.S. 42, 55-56 (1988); Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. 288, 296 (2001).  Nevertheless, for the

35

same reasons the city did not violate Ashe's Fifth Amendment or Fourteenth Amendment rights, Tony's Automotive is also free from liability. Thus, summary judgment will be granted in favor of Tony's Automotive on these constitutional claims.

### 2. Violation of State Negligence and Trespass Laws

Ashe claims that, though Tony's Automotive acted as an agent of the City of Montgomery, it "was without authority and was acting outside of the scope of [its] agency" when it removed several of his vehicles, while the resolution and notice specified only one vehicle--a Brown Chevy with no tires. Pl.'s Reply Br. at 2 (Doc. No. 40). Ashe therefore charges Tony's Automotive with trespass. He also claims Tony's Automotive's driver acted negligently and wantonly by failing to look behind the truck when backing up, thereby pinning Ashe between his car and the truck and injuring him. Comp. ¶¶ 28-29 (Doc. No. 1-1). Because summary judgment has been

36

granted on all federal claims in this case, the court declines, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over the remaining state claims.    Accordingly, Ashe's state claims will be remanded.    See <u>Myers v. Central Florida Investments, Inc.</u>, 592 F.3d 1201, 1227 (11th Cir. 2010) (stating that "federal district courts in removal cases must remand, rather than dismiss, state claims over which they decline to exercise supplemental jurisdiction").


                                   ***

       For the foregoing reasons, summary judgment will be granted in favor of the City of Montgomery and Tony's Automotive, LLC on all of Ashe's federal claims, and Ashe's state claims against Tony's Automotive will be remanded to state court.    An appropriate judgment will be entered.

       DONE, this the 30th day of November, 2010.

                          /s/ Myron H. Thompson
                       UNITED STATES DISTRICT JUDGE